UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OREST BAIDAN,<br>    Plaintiff,<br> v.<br>DIANA ROMANOVSKA,<br>    Defendant. | Case No.  24-cv-04473-VKD<br><br>**ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. § 1915**<br>Re: Dkt. No. 8 |

   Orest Baidan, who is representing himself, filed this action on July 24, 2024 alleging five state law tort claims: defamation, fraud, abuse of process, intentional infliction of emotional distress, and extortion. Dkt. No. 1. Mr. Baidan also filed an application to proceed *in forma pauperis* ("IFP"). Dkt. No. 2. On August 14, 2024, the Court granted Mr. Baidan's IFP application but found his complaint failed to state a basis for the Court's exercise of subject matter jurisdiction. Dkt. No. 5. The Court gave Mr. Baidan an opportunity to amend his complaint. *Id.* On September 12, 2024, Mr. Baidan filed an amended complaint, reasserting his state law claims and adding two federal claims under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment and the American with Disabilities Act of 1990 ("ADA"). Dkt. No. 8.

   For the reasons discussed below, the Court finds that Mr. Baidan's complaint fails to state a claim under federal law and is subject to dismissal under 28 U.S.C. § 1915(e). Accordingly, the Court continues to stay service of process. Although the Court questions whether Mr. Baidan can state any viable claim for relief under federal law, he will be given leave to amend once more. Mr. Baidan's amended pleading should be titled "Second Amended Complaint" and must be filed no later than **December 16, 2024.** If Mr. Baidan fails to file an amended complaint in time, or if the

1  amended complaint fails to cure all defects described in this order, the Court may issue an order
2  reassigning the case to a district judge with a recommendation that the complaint be dismissed in
3  whole or in part.

### I.  REVIEW OF AMENDED COMPLAINT

#### A.  Legal Standard

A court may dismiss a case filed without payment of the filing fee whenever it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). "[S]ection 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

While pro se pleadings are liberally construed, a complaint should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). A complaint must include facts that are "more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only plausible claims for relief will survive a motion to dismiss. *Id.* at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A complaint also must include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

#### B.  Mr. Baidan's Amended Allegations

In his amended complaint, Mr. Baidan asserts several claims against defendant Diana Romanovska, an attorney representing his ex-wife in a domestic violence case in state court, *Baidan v. Baidan*, 22DV000475, Santa Clara County Superior Court ("DV Action"). *See* Dkt. No. 8 at ECF 12[1] (Ex. B), ECF 23 (Ex. G). The amended complaint includes allegations suggesting

---
[1] The page numbers cited as "ECF __" are those assigned by the ECF system.

that Ms. Romanovska also represents Ms. Baidan in divorce proceedings against Mr. Baidan. *Id.* at ECF 2. In support of his claims under federal law, Mr. Baidan alleges that Ms. Romanovska "act[ed] in collusion with state actors" and "engaged in a series of actions designed to harm [him], both by violating his federal rights and causing severe emotional, financial, and physical harm." *Id.* at ECF 1.[2]

Mr. Baidan's allegations concern events dating back to May 2022. According to the amended complaint and its exhibits, on May 26, 2022, Mr. Baidan's ex-wife reported an altercation between herself and Mr. Baidan to Officer Jacob Shull, a police officer employed by the Mountain View Police Department ("MVPD"). *Id.* at ECF 3; *see also id.* at ECF 34-45 (Ex. L). Following this report, Officer Shull went to the Baidans' residence where he took Mr. Baidan into custody on suspicion of domestic violence. *Id.* at ECF 30 (Ex. K), ECF 59 (Ex. M). Mr. Baidan was subsequently transported to a hospital and released the following day. *Id.* at ECF 30 (Ex. K), ECF 58-59 (Ex. M). Ms. Baidan initiated the DV Action on June 8, 2022.

Mr. Baidan alleges that the MVPD confiscated firearms belonging to him and later petitioned for an order to maintain possession of the firearms in *City of Mountain View v. Orest Baidan*, 22CV401206, Santa Clara County Superior Court ("Seizure Action"). *Id.* at ECF 58-59 (Ex. M). Mr. Baidan alleges that he was arraigned on domestic violence charges in June of 2023 in *People v. Baidan*, B2300581, Santa Clara County Superior Court ("Criminal Action"). *Id.* at ECF 61 (Ex. M).

With respect to Ms. Romanovska's purported collaboration with state actors, Mr. Baidan alleges the following "examples":

Example 1: Ms. Romanovska relied on an affidavit filed by Officer Shull in the DV Action to "manipulate the legal proceedings in [Mr. Baidan's] divorce" and "falsely claim[] that [Mr. Baidan] had been arrested for domestic violence." *Id.* at ECF 2; *see id.* at ECF 58-59 (Ex. M). Mr. Baidan alleges that Officer Shull's declaration included false statements to the extent it suggests he was arrested. The amended complaint attaches a detention certificate stating that the

---

[2] A summary of Mr. Baidan's allegations relating to the state claims can be found in the Court's prior screening order. *See* Dkt. No. 5 at 2-3.

"taking into custody of [Mr. Baidan] on [May 26, 2022] . . . was a detention only, not an arrest." *Id.* at ECF 30 (Ex. K).  It also attaches a letter from the California Department of Justice stating that "a search of your fingerprints did not identify with any criminal history record maintained by this Bureau as provided by the California Penal Code Sections 11120-11127." *Id.* at ECF 11 (Ex. A).

Example 2:  Mr. Baidan alleges that when Ms. Baidan reported an altercation with him to the MVPD on May 26, 2022, Officer Shull and others "coached [his ex-wife] on how to entrap [Mr. Baidan] using their children." *Id.* at ECF 2.  He asserts that Ms. Romanovska "instructed" his father-in-law to assist in this entrapment and to "stag[e] interactions that would trigger further legal actions against [Mr. Baidan]." *Id.* at ECF 3.

Example 3:  Mr. Baidan asserts that his ex-wife "demanded that the police issue a restraining order against [Mr. Baidan] and remove him from their home" on May 26, 2022.  *Id.*  Mr. Baidan states that the police "attempted to secure a restraining order, but the judge declined to issue a criminal restraining order, instead issuing a standard court order prohibiting harassment, stalking, or threats." *Id.*  He asserts that despite this, Ms. Romanovska falsely represented to the court[3] "that a criminal restraining order had been issued" against him, allowing her to obtain a further restraining order. *Id.*

Example 4:  Mr. Baidan alleges that police "encouraged [his] ex-wife to sign a false report stating that she had requested the removal of [Mr. Baidan's] weapons." *Id.* at ECF 4.  He further asserts that Ms. Romanovska "instructed" his father-in-law "to commit perjury" by supporting this false report in court. *Id.*

Example 5:  Mr. Baidan states that he submitted a report to the MVPD alleging hate crimes and abuse from his ex-wife. *Id.*  He further alleges that the report was initially lost and when it was eventually found, "the description of the events was changed beyond recognition." *Id.* at ECF 4-5.  He asserts that it was sent back from the District Attorney's office because of multiple errors and that he attempted to resubmit it. *Id.* at ECF 4-5.  However, he alleges that this second report

---

[3] Mr. Baidan does not specify which court, but the Court assumes he means the state court presiding over the DV Action.

4

and evidence were "indefinitely blocked" by the MVPD and the evidence "did not make it to the District Attorney's office." *Id.* at ECF 5. Mr. Baidan asserts that, despite his "ongoing attempts to submit the evidence," Ms. Romanovska "falsely claimed that [Mr. Baidan's] ex-wife was not under criminal investigation" in court proceedings. *Id.*

Example 6: Mr. Baidan alleges that, nearly a year later, the MVPD filed a criminal complaint against [him] on Ms. Romanovska's request "just before an important civil hearing." *Id.* He states that the police required that he post bail which gave the impression that there was a new criminal matter opened against him. *Id.* He asserts that, in the criminal matter, "the judge dismissed the charges and sealed the record." *Id.* He further states that Ms. Romanovska used the fact that he had posted bail as "evidence of . . . supposed wrongdoing" and succeeded in getting a domestic violence restraining order against him. *Id.*

Example 7: Mr. Baidan asserts that an evaluating doctor, Dr. Rafael Padilla, in the DV Action (or perhaps another matter) "issued a guilty recommendation against [Mr. Baidan]," "despite having never met with him." *Id.* at ECF 6. He alleges that the doctor's recommendation relied "exclusively on Romanovska's words and the information she supplied." *Id.* Mr. Baidan further asserts that the judge in the case ignored his concerns that a lack of evaluation violated his rights and stated that "he personally knew and respected Dr. Padilla and would accept Dr. Padilla's verdict." *Id.*

### C.     Mr. Baidan's Federal Claims

Mr. Baidan asserts two claims for relief under 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Here, the Court construes the amended complaint as asserting a violation of the ADA and violations of the due process and equal protection clauses of the Fourteenth Amendment. Mr. Baidan does not request any specific relief but asserts that, as a result of Ms. Romanovska's actions, the DV Action—and potentially a

separate divorce action—were "manipulate[d] in favor of [his] ex-wife," his rights were restricted, and he "was left homeless and without access to essential resources such as medical care, food, and legal representation." *Id.* at ECF 2-6.

The Court considers whether the amended complaint states a plausible claim for relief under federal law.

### 1. Violation of the ADA

Mr. Baidan does not indicate which provision of the ADA forms the basis of his asserted right. The ADA is comprised of five titles and prohibits disability discrimination in employment (Title I, 42 U.S.C. §§ 12111-12117); in public services and programs by public entities (Title II, 42 U.S.C. §§ 12131-12165); in public accommodations and services by private entities (Title III, 42 U.S.C. §§ 12181-12189); and in telecommunications (Title IV, 47 U.S.C. § 255). Title V, 42 U.S.C. §§ 12201-12213, contains additional miscellaneous provisions relating to the other sections.

Mr. Baidan asserts that he was "obstruct[ed]" from being able "to fairly participate in the legal process, causing him to miss essential medical treatments and exacerbating his disability." Dkt. No. 8 at ECF 6. As the crux of Mr. Baidan's claim appears to be his access to the state courts, the Court construes the amended complaint as an attempt to plead violations under Title II, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* § 12131.

It is well-established that rights under Title II cannot be vindicated by an action under § 1983 because Congress has already "imbu[ed] [the statute] with its own comprehensive remedial scheme." *Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002) (quoting *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995)) (holding that Title II ADA claims cannot be vindicated under § 1983). The same is true of other provisions of the ADA. *See Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012) (no § 1983 claim based on Title I of the ADA).

6

Construing Mr. Baidan's allegations as a claim for relief directly under Title II of the ADA, the Court concludes that these allegations fail to state a plausible claim. Ms. Romanovska is a private citizen; there is no allegation that she is a representative of any public entity. *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (Title II "applies only to public entities . . ."). Indeed, the allegations regarding Ms. Romanovska refer principally to her actions as a private attorney representing Ms. Baidan in the DV Action and other civil actions. Such allegations do not support a claim for liability under Title II of the ADA.

### 2.     Violation of the Fourteenth Amendment

Mr. Baidan claims that Ms. Romanovska violated his rights under both the due process and equal protection clauses of the Fourteenth Amendment. He asserts that he was denied his "right to due process in the family court proceedings." Dkt. No. 8 at ECF 6. He does not explain why he believes he was denied equal protection. In any event, as Ms. Romanovska is a private citizen, Mr. Baidan cannot assert a claim against her under § 1983 for violation of the Fourteenth Amendment unless he plausibly alleges she acted "under color of state law." *West*, 487 U.S. at 48.

A private citizen acts "under color of state law" when there is such a "close nexus" between the state and the challenged action that the private citizen's conduct may be "fairly attributable" to the state itself. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). The Supreme Court has articulated four tests for determining whether a private individual can be considered a state actor for purposes of § 1983 liability: (1) public function; (2) joint action; (3) state compulsion; and (4) government nexus. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). Because Mr. Baidan contends that Ms. Romanovska "collud[ed] with state officials (including police officers and state judges) to deprive [him] of his federal rights," Dkt. No. 8 at ECF 6, the Court construes his amended complaint as an attempt to plead that Ms. Romanovska engaged in "joint action" with state officials.

"Under the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (internal quotations omitted). The question is whether the state has "so far insinuated itself into a position of interdependence with [the private actor] that it must be

7

recognized as a joint participant in the challenged activity." *Id.* (internal quotations omitted). "A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Id.* (internal quotations omitted). "To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights." *Id.* "[A] substantial degree of cooperation is required before imposing liability on private parties for acting jointly with state actors." *Liao v. Ashcroft*, No. C 08-2776 PJH, 2009 WL 636116, at *5 (N.D. Cal. Mar. 11, 2009).

The amended complaint does not plausibly allege that Ms. Romanovska acted jointly with any state official. As an initial matter, Mr. Baidan alleges only one instance of direct interaction between an alleged state actor and Ms. Romanovska—that she requested the MVPD file a criminal complaint against Mr. Baidan. Dkt, No. 8 at ECF 5. "[M]erely complaining to the police does not convert a private party into a state actor." *Gressett v. Contra Costa Cnty.*, No. C-12-3798 EMC, 2013 WL 2156278, at *25 (N.D. Cal. May 17, 2013) (quoting *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989)). The fact that Ms. Romanovska allegedly asked the police to file a complaint against Mr. Baidan does not plausibly show "collusion" or even cooperation between the MVPD and Ms. Romanovska. *See Cortez v. Cnty. of Alameda*, No. 11-cv-03199 YGR, 2012 WL 2992737, at *6 (N.D. Cal. July 20, 2012), *aff'd*, 580 F. App'x 565 (9th Cir. 2014) ("Neither making complaints to the County Defendants nor 'urging' the County Defendants plausibly suggests 'an agreement or meeting of the minds' to form a conspiracy; simply alleging that every Defendant acted with discriminatory intent does not establish a meeting of the minds on a common objective.").

The remaining allegations do not suggest any connection whatsoever between Ms. Romanovska and any state actors. Many rely on a conversation between Ms. Baidan and MVPD officers in which Ms. Romanovska did not participate. Other allegations describe interactions between Ms. Romanovska and Mr. Baidan's father-in-law, another private actor, or actions taken by Ms. Romanovska as an advocate representing her client. Dkt. No. 8 at ECF 3, 5. None of these allegations supports a finding of joint action. *See Adams v. Kerr*, No. 20-cv-08557-BLF, 2022 WL 1215194, at *3 (N.D. Cal. Apr. 25, 2022) (even where counsel is appointed by the state,

1     "actions taken within the scope of the attorney-client relationship" are not state actions).

2     Thus, even drawing all inferences in Mr. Baidan's favor, the amended complaint's allegations do not plausibly support any claim that Ms. Romanovska engaged in joint action with the state to deprive Mr. Baidan of his Fourteenth Amendment rights.

### 3. Requested Relief

The amended complaint does not identify the relief Mr. Baidan seeks in this action, as required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a)(3).

To the extent Mr. Baidan's claim could be construed as requesting relief in the form of overturning or undoing any judgment in the family court proceedings, such relief is barred. It is not clear from Mr. Baidan's allegations if the adverse judicial proceedings he references are final judgments by the state court. If so, the *Rooker-Feldman* doctrine generally prohibits federal court review of final state court determinations in judicial proceedings. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). This doctrine applies where a plaintiff is "de facto" appealing a state court judgment by "(1) asserting errors by the state court as an injury, and (2) seeking relief from the state court judgment as a remedy." *Loumena v. Nichols*, No. 15-cv-02303-BLF, 2016 WL 7437147, at *3 (N.D. Cal. Feb. 3, 2016), *aff'd*, 671 F. App'x 455 (9th Cir. 2016) (citing *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)). Much of the harm alleged by Mr. Baidan appears to stem from adverse rulings of one or more state courts. *See, e.g.,* Dkt. No. 8 at ECF 3. Any action seeking relief from such rulings likely would be barred by the *Rooker-Feldman* doctrine. *See Malberg v. McCracken*, No. 5:22-CV-01713-EJD, 2023 WL 2769095, at *4 (N.D. Cal. Mar. 31, 2023) (challenge to domestic violence restraining order a "clear[] example of a plaintiff attempting to blatantly end run an adverse state court judgment"). However, as Mr. Baidan has not identified the relief he is seeking, the Court cannot assess the application of the doctrine at this time.

***

As Mr. Baidan fails to state any plausible claim for relief under federal law, the Court does not consider his state law claims at this time. *See* 28 U.S.C. § 1367(c).

9

### D. Related Case Allegations

Mr. Baidan refers again in his amended complaint to two cases he believes are related to this case: *Baidan v. Shull*, 24-cv-03171 and *Baidan v. Padilla*, 24-cv-03865. On July 12, 2024, Judge Illston dismissed *Padilla* with prejudice, Dkt. No. 11; *Shull* is still pending before this Court. Mr. Baidan states that the "false statements and actions [of Officer Jacob Shull] were used by Defendant Diana Romanovska as the basis for her criminal and unethical actions against [Mr. Baidan]." Dkt. No. 8 at ECF 1.

Under the Local Rules of the Northern District of California, a case is related to another matter when: "(1) [t]he actions concern substantially the same parties, property, transaction, or event; and (2) [i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil L.R. 3-12(a). If a party believes that two cases should be related, he or she must file in the lowest-numbered case an administrative motion to consider whether cases should be related, pursuant to Civil L.R. 7-11. Civil L.R. 3-12(b). Any such motion must contain "(1) [t]he title and case number of each apparently related case; [and] (2) [a] brief statement of the relationship of the actions according to the criteria set forth in Civil L.R. 3-12(a)." Civil L.R. 3-12(d).

If Mr. Baidan amends his complaint and, after review, the Court determines that the amended complaint sufficiently states a claim on which relief can be granted, Mr. Baidan may seek to relate this case to another case by filing an appropriate motion demonstrating that the requirements of Civil Local Rule 3-12(a) are met.

## II. CONCLUSION

Mr. Baidan's amended complaint does not establish any claim for relief under federal law. However, given Mr. Baidan's pro se status and because it is not "absolutely clear" that these deficiencies cannot be cured, the Court will grant him another opportunity amend his complaint. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Mr. Baidan is given leave to amend only to the extent he believes that he can truthfully assert a plausible claim, consistent with his obligations under Rule 11 of the Federal Rules of Civil Procedure.

The second amended complaint must be filed no later than **December 16, 2024** and must

10

include the caption and civil case number used in this order, Case No. 24-cv-04473-VKD, and the words "SECOND AMENDED COMPLAINT" on the first page.

If Mr. Baidan fails to file a second amended complaint in time, or if the second amended complaint fails to cure the defects described above, the Court may issue an order reassigning the case to a district judge with a recommendation that the complaint be dismissed for failure to state a claim.

**IT IS SO ORDERED.**

Dated: November 25, 2024

Virginia K. DeMarchi
United States Magistrate Judge